Christine O'DONNELL, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (UNITED PARCEL SERVICE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 2003.

Decided Sept. 4, 2003.

Mark R. Schmidt, Media, for petitioner.

Sheilann P. Hewitt, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY SENIOR JUDGE MIRARCHI, JR.

Christine O'Donnell (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) denying Claimant's review petition. The WCJ's decision also granted a penalty petition that Claimant had filed against United Parcel Service (Employer) and denied Employer's termination petition. We vacate and remand in part and affirm in part.

The WCJ found the following relevant facts. By order of the WCJ dated April 26, 1999, Claimant was awarded compensation benefits for injuries sustained on April 15, 1998 while in Employer's employ.[1] Her injuries were determined to be "cervical, thoracic, lumbar sprain and strain, trapezius myofascitis, right brachial plexopa-thy, C5–6 disc herniations and C6–7 disc bulge." WCJ's Finding of Fact No. 3. Employer was assessed counsel fees and costs for an unreasonable contest to Claimant's claim petition.

On August 24, 1999, Claimant filed a penalty petition alleging that Employer failed to pay for medical treatment previously awarded by the April 26, 1999 decision. Claimant also filed a petition for review, seeking to enlarge the description of the injury. Employer denied the material allegations of Claimant's petitions, and filed a termination petition alleging that as of January 20, 2000, Claimant had fully recovered from her work-related injuries. The consolidated petitions were heard by the WCJ.

Claimant testified by deposition with respect to her treatment and medical studies and the referrals made by her treating physician, William Ingram, M.D. He referred her to a psychologist, Jacques Lipetz, Ph.D., who treated her for depression and suicide ideation that resulted from her chronic pain. She also testified regarding medical bills and prescriptions that Employer failed or refused to pay.[2]

Dr. Ingram testified by deposition that he has been Claimant's primary treating physician since her work injury. In October 1999, he referred Claimant to Dr. Lipetz for treatment of depression caused by chronic pain, after he first attempted to treat this condition himself. He coordinated his care for this condition with Dr. Lipetz.[3] Dr. Ingram also described treatment recommendations he made to treat Claimant's physical complaints, all of

1. The injuries occurred when Claimant was loading a 115 pound package into the back of one of Employer's trucks.

2. Employer apparently presented no evidence in opposition to Claimant's penalty petition.

3. As Dr. Lipetz is not a psychiatrist, thus not a medical doctor, he cannot prescribe medications. Dr. Ingram, however, has prescribed anti-depressant medication for Claimant.

which he described as reasonable and necessary to alleviate Claimant's pain and to enable her to perform daily activities. These included a whirlpool tub (that is, a device that may be placed in Claimant's bathtub to produce massaging jets of water), an adjustable hospital bed, and a handicapped license plate. He also recommended breast reduction surgery, noting that Claimant had gained approximately 40 pounds of weight since the work injury, most of which developed in Claimant's breast area. Dr. Ingram opined that such additional weight at that location caused significant added strain on Claimant's back. Dr. Ingram further opined that Claimant was not physically capable of returning to work in any capacity.

Dr. Lipetz testified by deposition with respect to his treatment of Claimant. He administered a psychological examination and numerous written psychological tests. Based upon the results of the examination and tests, he diagnosed Claimant as suffering from pain disorder associated with psychological factors, mood disorder with depressive features, and adjustment disorder with mixed anxiety and depressed mood. Dr. Lipetz opined that all of these conditions were the direct result of the work injury. He further opined, however, that Claimant was not disabled from a psychological perspective.

Claimant also presented the deposition testimony of Scott M. Fried, D.O., a board-certified orthopedic surgeon. He testified that he first saw Claimant on February 9, 2000. Following a comprehensive orthopedic examination and review of Claimant's voluminous medical records, he diagnosed Claimant as suffering from a significant brachial plexus traction injury, a traction neuropathy of the ulnar and radial nerves, and a sympathetically medicated pain syndrome in the left upper extremity. He opined that the latter condition progressed to reflex sympathetic dystrophy by June 12, 2000. He further opined that all of these conditions were directly the result of the work injury and that Claimant was not capable of returning to work as a loader with Employer.

Dr. Fried also concurred with all of the treatment recommendations made by Dr. Ingram, including the need for breast reduction surgery. With regard to the latter procedure, Dr. Fried opined that Claimant might ultimately require thoracic outlet surgery, a very risky procedure, unless other treatments served to alleviate her pain and disability. Dr. Fried testified that it was reasonable and necessary to first try less risky treatments, such as breast reduction surgery, before resorting to thoracic outlet surgery.

Employer presented the deposition testimony of Noubar Didizian, M.D. and Robert Toborowsky, M.D. Dr. Didizian examined Claimant on one occasion and reviewed medical records made available to him by Employer. Based on the examination and review of certain medical records, Dr. Didizian opined that Claimant suffered from no "organic pathology" related to the work injury. He further denied that Claimant ever suffered from cervical, thoracic, or lumbar strain or sprain, a herniated disc, or radiculopathy. He testified that he found no evidence of a brachial plexopathy and denied that the diagnostic studies revealed such a condition.[4] He opined that Claimant could return to her job without restriction.

4. Dr. Fried testified that Dr. Didizian's opinions were in direct conflict with every one of Claimant's treating physicians, and he explained in great detail why the diagnostic studies (including those made after Dr. Didizian examined Claimant) indicated that Claimant's condition "classically" fit a brachial

Dr. Toborowsky, a psychiatrist, examined Claimant on one occasion. Based upon a history provided by Claimant, his review of medical records provided by Employer, and his own mental status examination, he opined that Claimant was not disabled from a psychiatric standpoint. He did opine, however, that Claimant might have symptoms of depression. Any such depression, however, did not rise to the level of a disorder. He further opined, however, as found by the WCJ, "that it was not unreasonable for Claimant to continue treatment with Dr. Lipetz for depression, which was caused by her physical pain." WCJ's Finding of Fact No. 15.

Based on her review of the above evidence, the WCJ made the following credibility and factual determinations, which we quote in their entirety because such findings form the basis of Claimant's arguments:

16. The Claimant is found credible and convincing regarding her ongoing complaints of pain and her inability to return to work. Claimant, however, is not found credible with regard to her testimony that she suffered a psychiatric injury.

17. The testimony of Dr. William Ingram is found not to be credible or persuasive. His testimony as to the multitude of additional injuries suffered by Claimant as a result of her work injury is not borne out by diagnostic studies or other credible evidence. His testimony is not accepted as fact.

18. The testimony of Dr. Scott Fried is found to be credible and convincing in part. His testimony is supported by the complaints of Claimant, the results of their respective medical examinations, the results of Claimant's diagnostic studies and by the reports of other treating physicians. His testimony that Claimant requires breast reduction surgery as a result of her work injury is not credible and is specifically rejected. In addition, his testimony as to his agreement with all of Dr. Ingram's findings is not accepted as credible because Dr. Ingram's opinions have already been rejected as not credible.

19. The testimony of Dr. Noubar Didizian is not credible or persuasive with the exception of his opinion that Claimant's proposed breast reduction surgery is not an indicated surgery to relieve back or neck pain. Dr. Didizian's opinions that Claimant's proposed breast reduction surgery is not an indicated surgery to relieve back or neck pain is accepted as fact. The remaining opinions of Dr. Didizian are not accepted as fact as they are not credible or persuasive.

20. The testimony of Dr. Lipetz is found not to be credible or persuasive with regard to Claimant's injury, including a psychological injury. His testimony is not consistent with the credible testimony of Dr. Toborowsky and is rejected.

21. The testimony of Dr. Robert Toborowsky is accepted in its entirety. His testimony is found credible concerning his report of Claimant's history, record review and mental status examination.

Based on these findings, the WCJ denied Claimant's review petition and Employer's termination petition. The description of Claimant's injury remained as that found in the previous adjudication.[5] The

plexus traction injury. WCJ's Finding of Fact No. 11.

5. The WCJ also granted Claimant's penalty petition based on Employer's refusal to pay

medical bills, imposing a 30% penalty of the value of such bills to be paid to Claimant, noting that this was Employer's second violation of the Workers' Compensation Act (Act),

Board affirmed, and this petition for review followed.

■ This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *Columbo v. Workmen's Compensation Appeal Board (Hofmann)*, 162 Pa. Cmwlth.307, 638 A.2d 477 (1994). Also, the "capricious disregard" of evidence standard of review is now a component of appellate consideration in every administrative agency adjudication where the question is properly brought before the Court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002). As discussed further in this opinion, Claimant *has* raised a capricious disregard of evidence issue in this case. Further, the WCJ is the sole arbiter of the credibility and the weight of testimony and other evidence, and he or she is free to reject or accept the testimony of any witness in whole or in part. *Columbo.* So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Id.*

Claimant argues that the WCJ erred by (1) failing to issue a reasoned decision by capriciously disregarding evidence; (2) failing to determine that she suffered from a psychiatric injury as a result of her work injuries; and (3) capriciously disregarding "unrebutted" evidence regarding medical services required by Claimant to treat her work injuries. These arguments are based on a number of facets of the WCJ's opinion. Claimant contends that the WCJ simply rejected, without explanation, claims for expanding the description of the

work injury, even though the evidence found credible by the WCJ supports such expansion. Claimant notes that the WCJ rejected a claim for treatment of depression related to the work injury, even though the WCJ specifically found that Dr. Toborowsky opined that it was not unreasonable for Claimant to seek treatment for depression arising from her physical pain. The WCJ found Dr. Toborowsky's testimony credible "in its entirety." WCJ's Finding of Fact No. 21.[6] Claimant also argues that the WCJ's decision is inconsistent and confusing in that it determines that Dr. Ingram's testimony was not credible because it was "not borne out by diagnostic studies" (WCJ's Finding of Fact No. 17) but determines that Dr. Fried's testimony is credible because it was supported, among other things, by the diagnostic studies. The WCJ rejects those unspecified opinions of Dr. Fried that are shared by Dr. Ingram, because the latter's testimony was rejected in its entirety. Claimant argues that this is "circular" reasoning that leaves the reviewer without really knowing why Dr. Ingram's opinions were rejected, especially since they were really little different than those of Dr. Fried's.

Section 422(a) of the Act, 77 P.S. § 834, provides in relevant part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in con-

Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

6. Claimant also contends that the opinions of Drs. Lipetz and Toborowsky were "consistent," an assertion not entirely correct.

formity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason: the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

■■■ Our Supreme Court has just recently held that a WCJ's decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the Board without the need for further elucidation, and if it allows for adequate review by the appellate courts under their standards of review. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, — Pa. ——, 828 A.2d 1043 (No. 51 EAP 2000) (2003).[7] Further, the Court held that Section 422(a) requires that when the testimony is presented by way of deposition, as all of the testimony in the present case was, the WCJ must articulate the reasons why one witness' testimony was credited over another's. Thus, it is no longer sufficient for a reviewing body, after reviewing the record, to "imagine" why the WCJ may have determined one witness to be more credible than another. — Pa. at ——, 828 A.2d at 1053–54. The WCJ must clearly state its reasons for credibility determinations on deposition testimony so that the reviewing body may determine whether those reasons are set forth in the record.[8]

The Supreme Court's ruling in *Daniels* is particularly critical in the present case because here the Board determined that the WCJ's decision was reasoned based upon our decision in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 753 A.2d 293 (Pa.Cmwlth. 2000), overruled by the Supreme Court. This Court had held in that case that a WCJ issues a reasoned decision when he or she outlines all of the evidence considered, merely states the credible evidence upon which he or she relied, and sets forth the reasons for the ultimate disposition of the petition at issue.[9]

■■ In the present case, few of the WCJ's credibility determinations articulate a basis for their making. Further, they also evidence inconsistency, fail to resolve all of the issues, and generally fail to allow for meaningful appellate review unless the reviewing body may "imagine" why the WCJ made the findings she did. In short, the WCJ's decision is not reasoned pursuant to *Daniels*. Further, some findings of fact appear to be unsupported by substantial evidence.

Claimant's review petition sought the enlargement of the description of her injury by including (1) a psychological component and (2) additional physical components. Also, Claimant apparently desired that the additional treatments recommended by Dr. Ingram be authorized. The WCJ refused to enlarge the description of the work injury by including a psychological component based on the credible testimony of Dr. Toborowsky, which the WCJ accepted "in its entirety." WCJ's Finding of Fact No. 21. The WCJ,

---

7. This decision was filed after the submission of the parties' briefs in this matter.

8. The Court in *Daniels* also held, however, that when the WCJ is present for the live presentation of a witness' testimony, the WCJ may merely articulate his or her credibility findings with regard to that witness' testimony, without further elaboration.

9. Thus, the WCJ's general failure to articulate reasons for her credibility determinations would have been allowed under prior law.

however, failed to articulate any reason why she accepted the testimony of Dr. Toborowsky over that of Dr. Lipetz: she simply stated that she believed one and not the other. Thus, the WCJ clearly failed to issue a reasoned decision pursuant to *Daniels* with respect to Claimant's psychological claim.[10]

Even if the WCJ had articulated a reason for accepting Dr. Toborowsky's testimony, we must also note that Dr. Toborowsky opined "that it was not unreasonable for Claimant to continue treatment with Dr. Lipetz for depression, which was caused by her physical pain." WCJ's Finding of Fact No. 15. Something that is "not unreasonable" is "reasonable," and medical treatment for a work-related injury that is reasonable or necessary is compensable under the Act. *See Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215 (Pa. Cmwlth.2003). Further, Dr. Toborowsky testified that he "wouldn't quarrel with the possibility or likelihood that [Claimant] had a pain disorder." Dr. Toborowsky's Deposition, p. 34. He then testified that he found no psychological source of the pain (rather, the source of Claimant's pain was the physical injury), and in this regard he differed with Dr. Lipetz. *Id.* at 35–36. Nevertheless, he testified that Claimant had complaints and symptoms regarding anxiety or mood. Where he differed with Dr. Lipetz, however, was in his opinion that these symptoms did not rise to the level of a "disorder." He then stated: "Are they [the complaints and symptoms] the subject of proper attention by a psychologist like Dr. Lipetz, sure. On an

elective basis they are." *Id.* at 33. Thus, Dr. Toborowsky does support the conclusion that it is reasonable for Claimant to receive psychological treatment for depression or psychological "symptoms" caused by her physical pain that was, in turn, caused by the work injury. In this regard, we should note that even though Claimant is not, per the testimony of either Dr. Toborowsky or Dr. Lipetz, disabled by a psychological condition, the Act nevertheless provides for treatment that is palliative, *i.e.*, reasonably designed to manage a claimant's symptoms. *Solomon; Central Highway Oil Co. v. Workers' Compensation Appeal Board (Mahmod)*, 729 A.2d 106 (Pa.Cmwlth.1999).

Based on the above, we must conclude that (1) the WCJ failed to issue a reasoned decision with regard to Claimant's psychological claim, and (2) the WCJ's findings of fact regarding Claimant's psychological claim are also inconsistent and/or lack support by substantial evidence of record. In this regard, we note that Section 422(a) of the Act requires that "[u]ncontroverted evidence may not be rejected for no reason or for an irrational reason: the [WCJ] must identify that evidence and explain adequately the reasons for its rejection."

With regard to the issue of Claimant's physical injuries, the WCJ did articulate reasons for rejecting the testimony of Dr. Ingram and accepting the testimony of Dr. Fried. Nevertheless, the WCJ's findings regarding the testimony of these witnesses are confusing and fail to provide a reason for rejecting physical diagnoses and treatment made by an expert witness

---

10. The Board affirmed the WCJ's refusal to expand the description of the work injury by including a psychological component by emphasizing Dr. Toborowsky's statement that Claimant's psychological treatment was "elective." First, by doing so, the Board, pursuant to *Daniels*, is simply "imagining" why the WCJ made her credibility determination, since the WCJ never stated this as a reason. Second, it is not a sufficient reason. One might also observe that general treatment for pain is elective in that one has the option to suffer through the pain until healed or obtain medicinal or other relief.

found by the WCJ to be generally credible. The WCJ therefore failed to issue a reasoned decision with regard to Claimant's physical claims as well. Moreover, the WCJ's findings also lack support from substantial evidence.

The WCJ found that Dr. Ingram's "testimony as to the multitude of additional injuries suffered by Claimant is not borne out by [unspecified] diagnostic studies or other [unspecified] credible evidence." WCJ's Finding of Fact No. 17. A review of Dr. Ingram's testimony, however, shows that, in addition to depression, he diagnosed Claimant as suffering only from "right brachial plexopathy, cervical, thoracic and lumbar strain and sprain, and clinical evidence of cervical radiculopathy." Dr. Ingram's Deposition, pp. 19–20. Claimant's injury had already been determined to be "cervical, thoracic, lumbar sprain and strain, trapezius myofascitis, right brachial plexopathy, C5–6 disc herniations and C6–7 disc bulge." WCJ's Finding of Fact No. 3. Thus, aside from depression and clinical evidence of cervical radiculopathy, we do not detect any "multitude" of additional injuries described by Dr. Ingram. In fact, his diagnosis essentially mirrors that of the injury determined during the prior WCJ proceeding, minus the psychological component.

Also, it should be noted that Dr. Ingram's testimony supports the WCJ's conclusion that claimant remains totally disabled from her work injury. Thus, at the very least, the question must be raised concerning how Dr. Ingram's testimony can be rejected in its entirety when it generally supports the findings of the WCJ regarding the nature of Claimant's

injuries (aside from the psychological component) and her state of disability.

Dr. Fried, whose testimony was generally found to be credible, diagnosed Claimant as suffering from a significant brachial plexus traction injury, a traction neuropathy of the ulnar and radial nerves, and a sympathetically medicated pain syndrome in the left upper extremity that eventually progressed to reflex sympathetic dystrophy.[11] Thus, it appears that Dr. Fried, not Dr. Ingram, diagnosed Claimant as suffering from a number of significant physical injuries additional to those described in the first WCJ's decision. Dr. Fried explained how his diagnoses were supported by his examination and testing, the medical literature, and diagnostic studies and reports of other physicians. One might ask why the description of Claimant's injuries was not expanded to include Dr. Fried's diagnoses, which the WCJ apparently found to be credible because they were based on medical examinations, diagnostic studies, and reports of other physicians. Further, one might ask how Dr. Ingram's opinions were not supported by these diagnostic studies, especially when his opinions support the WCJ's conclusion that Claimant suffers from a brachial plexus injury and back injuries. Any response to these questions would be mere speculation, as the answers are not found in the WCJ's decision.

■ Both Dr. Ingram and Dr. Fried recommended certain treatments to alleviate Claimant's physical symptoms: breast reduction surgery, a whirlpool device, a hospital bed, and a handicap license plate. Of these, the WCJ made a finding only regarding the breast reduction surgery.[12]

11. Dr. Fried also diagnosed lower back and extremity "involvement by history." Dr. Fried's Deposition, p. 22. As those conditions were not within his expertise, however, he

deferred treatment for them to other physicians. *Id.*

12. The absence of any specific findings regarding the whirlpool bath, a hospital bed,

Again, the WCJ failed to articulate a reason why she believed the testimony of Dr. Didizian and rejected the testimony of Drs. Ingram and Fried with respect to this particular treatment. Therefore, the WCJ failed to issue a reasoned decision with respect to the reasonableness or necessity of the treatments recommended by Drs. Ingram and Fried.

For the above reasons, the order of the WCJ is vacated and remanded in part and affirmed in part. The order is vacated and remanded in part for further findings of fact and conclusions of law with respect to Claimant's review petition. The WCJ is directed to make a reasoned decision respecting the review petition in accordance with *Daniels* and our discussion in this opinion. By so stating, we do not imply that the WCJ must resolve the factual issues in any particular manner. It may be helpful, however, to take note of the wisdom of the Supreme Court: "One of the virtues of the legal profession—and it is a virtue that certainly applies to the judicial decision-making process—is that it depends upon reasoned articulation. Views are oftentimes shaped, molded, and changed in the very process of articulation." *Daniels*, at 1054, n. 8. The order is affirmed in all other respects.

### ORDER

AND NOW, this 4th day of September, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is vacated and remanded to the Workers' Compensation Judge (WCJ) for further findings of fact and conclusions of law with respect to Claimant's review petition. The WCJ is directed to make a reasoned decision respecting the review

petition in accordance with *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, —— Pa. ——, 828 A.2d 1043 (No. 51 EAP 2000) (2003), and the foregoing opinion. The order is affirmed in all other respects.

Jurisdiction relinquished.

and a handicap license plate makes it only speculative that the WCJ made any determination on these matters at all. One might perhaps surmise, however, that they were de-

termined not to be reasonable or necessary because of the WCJ's wholesale rejection of the testimony of Dr. Ingram as not credible.