**Lamont TAYLOR, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GREYHOUND, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 17, 2006.

Decided May 26, 2006.

Andrea L. McCormick, Philadelphia, for petitioner.

Lisa D. Eldridge, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Lamont Taylor (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) denying Claimant's claim petition. We affirm.

On June 25, 2003 Claimant filed a petition alleging that he sustained a work-related injury in the nature of post-trau-matic stress disorder while employed by Greyhound, Inc. (Employer) as a bus driver. Claimant alleged the disorder was brought about after observing a plane crash into the World Trade Center on September 11, 2001.

At the WCJ's hearing, Claimant testified that he started working for Employer in 1999 as a bus driver. On September 11, 2001, he drove from Mount Laurel, New Jersey to New York City, and drove through the Lincoln Tunnel. After he discharged his passengers at 42nd and 8th Avenue, Claimant drove to 40th and 11th Avenue, the designated location for leaving the bus. After his arrival, other bus drivers told him that a plane had hit one of the World Trade Center towers. Shortly thereafter, Claimant looked up and saw another plane come around and hit the second tower. Claimant became upset and went numb. He thought it was some sort of attack.

The drivers were put in a dormitory that did not have windows, so that they did not know what was going on. Claimant remained at the dormitory for two and one half to three days. Although Claimant went outside, he never went to the site of the towers. After the city was deemed safe, Claimant was instructed to go to Mount Laurel to pick up passengers. Claimant, however, instead went to Philadelphia, where he parked the bus in Employer's lot and told his supervisor that he could not do it.

As to his mental state, Claimant testified that he has had and continues to have flashbacks of Vietnam. Claimant received counseling and was hospitalized for post-traumatic stress disorder (PTSD) in 1998. Prior to September 11, Claimant stated that he was doing okay, but he wasn't doing great. Since September 11, Claimant's flashbacks come in a war-type image, with a lot of fighting and bombs.

Claimant submitted the testimony of Dr. Katherine Bertolet, a licensed psychologist. She testified that she examined Claimant on June 27, 2003. After seeing the second plane hit the World Trade Center, Claimant has been having flashbacks of both Vietnam and his experience of witnessing the attack on the tower. According to Dr. Bertolet, Claimant suffers from PTSD with psychotic features and concluded that this was caused by his witnessing the events at the World Trade Center.

Employer submitted the testimony of Dr. Lauren Wylonis, a board certified psychiatrist, who examined Claimant on December 16, 2003. Dr. Wylonis diagnosed Claimant as suffering from post-traumatic disorder chronic and alcohol dependency. She attributes the PTSD chronic to Claimant's war experience in Vietnam. According to Dr. Wylonis, Claimant is no worse than he was during his admission to the VA hospital six years prior. The real cause of Claimant's disability, according to Dr. Wylonis, is Claimant's alcohol dependency. Such diagnosis is supported by Claimant's thirty year history of drinking alcohol. Claimant uses alcohol in larger quantities than intended and has experienced withdrawal symptoms when alcohol use is suspended or diminished.

The WCJ found Claimant's testimony with respect to the events of September 11, to be credible. In addition, the WCJ credited the testimony of Dr. Wylonis as more credible than that of Dr. Bertolet. He noted that Dr. Wylonis testified that Claimant's diagnosis of PTSD predates September 11, 2001, and his symptoms and complaints relating to his diagnosis have not changed since September 11, with the exception that he now believes that he cannot drive to New York. The WCJ also found that observing the plane hit the World Trade Center was not a working condition and Claimant failed to establish any type of employment nexus between the World Trade Center and his job.

■ Finally, the WCJ found that by letter dated October 1, 2003, Employer advised Claimant that it was raising a defense under Section 301(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 431. Despite Claimant's complaint as to the lateness of the defense, the WCJ found that the defense was timely raised and that the events of September 11, were an act of war by a terrorist and thus fell within the purview of Section 301(a).[1] On appeal, the Board affirmed the decision of the WCJ and this appeal followed.[2]

■ Before this court, Claimant argues that he is entitled to benefits because he suffers from PTSD, which he claims is a result of an abnormal working condition, i.e., observing a plane crash into the World Trade Center.

■ Initially, we note that in order to be eligible for compensation benefits, a claimant must show that the injury occurred in the course of employment and that it was related thereto. *Lehigh County Vo–Tech v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995). With respect to whether a claimant's injury occurred in the course

---

1. Section 301(a) of the Act provides in pertinent part that "no compensation shall be paid if, during hostile attacks on the United States, injury or death of employes results solely from military activities of the armed forces of the United States or from military activities or enemy sabotage of a foreign power."

2. Our review is limited to determining whether constitutional rights were violated, an error of law committed, or whether necessary findings are supported by substantial evidence. *O'Donnell v. Workers' Compensation Appeal Board (United Parcel Service),* 831 A.2d 784 (Pa.Cmwlth.2003).

of employment under Section 301(c) of the Act, 77 P.S. § 411, the Supreme Court in *Kmart v. Workers' Compensation Appeal Board (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660 (2000), stated that the Act sets forth two situations in which an employee may obtain benefits.

In the first situation, the employee must be actually engaged in the furtherance of the employer's business or affairs, regardless of whether the employee is upon the employer's premises. In the second situation, the employee need not be engaged in the furtherance of the employer's business or affairs. Howeverer, the employee must fulfill three requirements: he or she (1) must be on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (2) must be required by the nature of his employment to be present on the premises; and (3) must sustain injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Id.* 561 Pa. at 115, 748 A.2d at 662.

With respect to the first situation, we must consider whether Claimant was injured while actually engaged in the furtherance of Employer's business affairs. Although in his brief Claimant alleges that he was looking out of the window while driving the bus at the time he viewed the plane hit the tower, his testimony and the findings of the WCJ do not support this proposed version of events. (Claimant's brief at p. 6, 8.) As found by the WCJ, Claimant was not transporting passengers at the time he viewed the tower attack. Rather, Claimant had already discharged

his passengers. He then drove the bus to a designated location when another driver told him about the first airplane. Shortly thereafter, Claimant then looked up and saw the second plane hit the tower. (WCJ's F.F. No. 4.b and No. 10.) Such facts do not demonstrate that at the time Claimant viewed the second plane that he was engaged in furtherance of Employer's business affairs inasmuch as he was not driving passengers and had already parked the bus at the designated location.[3]

As such, we will next determine whether Claimant satisfies the second situation set forth in Section 301(c)(1) of the Act. Under the second scenario, a claimant must show that he was on the premises occupied or under the control of the employer, or upon which the employer's business affairs are being carried on; the claimant was required by the nature of his employment to be on the premises and that the claimant sustained injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. Here, there is nothing about the condition of Employer's premises which caused the injury alleged by Claimant. Claimant was in midtown Manhattan whereas the World Trade Center was located in the downtown area. Claimant never went to the scene of the towers. Nothing occurred on Employer's premises causing an injury to Claimant.

In accordance with the above, because Claimant was not in the course of employment at the time of his injury, the decision of the Board is affirmed.[4]

---

3. We also note that although Claimant testified that he is an hourly employee, there was no evidence presented as to whether Claimant was "on duty" at the time he viewed the plane crash. As previously stated, Claimant had already dropped off his passengers and returned the bus to a designated location after which time he viewed the plane crash.

4. Because of our disposition we need not address the issue of whether Employer raised the defense under Section 301(a) of the Act in a timely manner.

## ORDER

Now, May 26, 2006, the order of the Workers' Compensation Appeal Board, in the above-captioned matter, is affirmed.