IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristian Balas,                                          :
                                                         : No. 52 C.D. 2015
                              Petitioner                 : Submitted:  November 6, 2015
                                                         :
                    v.                                   :
                                                         :
Workers' Compensation Appeal                             :
Board (Coventry Plumbing and                             :
Langton),                                                :
                                                         :
                              Respondents                :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                         FILED:  February 10, 2016


           Kristian Balas (Claimant) petitions for review of the December 23,
2014, order of the Workers' Compensation Appeal Board (WCAB) affirming the
decision of a workers' compensation judge (WCJ) to deny Claimant's claim
petitions and to deny the joinder petition filed by the Uninsured Employer
Guaranty Fund (Fund).  We affirm.

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge
Leadbetter assumed the status of senior judge.

On March 18, 2008, Claimant filed a claim petition against PMC Mechanical (PMC), alleging that on September 19, 2007, he sustained injuries to his hand, wrist, and arm while working at the Philadelphia Premium Outlets in Limerick, Pennsylvania (job site). Claimant sought total disability benefits from September 20, 2007, and ongoing, plus payment of medical bills and counsel fees. On October 1, 2008, and February 26, 2009, Claimant filed additional claim petitions against PMC, the Fund, and Jack Langton, making identical allegations. On March 16, 2009, the Fund filed a joinder petition alleging that Coventry Plumbing, Inc. (Coventry) was Claimant's employer or statutory employer.

Claimant testified before the WCJ on August 27, 2008, and by deposition on October 19, 2009. Claimant testified that he was hired on September 17, 2007, to work as an electrician's assistant at the job site. (WCJ's Findings of Fact, 4/26/10, No. 2a.) On September 19, 2007, while Claimant was trying to cut the binds on a bundle of conduit, he sliced his left middle finger with a razor. (*Id.*) Claimant notified his supervisor, Jeffrey Bloom, of the injury and went home. (*Id.*) On September 20, 2007, Claimant returned to the job site and asked Langton for a light-duty job. (*Id.*) Langton refused and put Claimant on a concrete job. (*Id.*) Claimant injured his left arm while attempting to catch a wheelbarrow that had slipped onto its side. (*Id.*) When Claimant informed Langton of his injury, Langton fired him. (*Id.*) On September 23, 2007, Claimant went to the emergency room, where he was treated and released. (*Id.*) The emergency room records identify "Jackson Electric" as Claimant's employer. (*Id.*, No. 11.)

Claimant testified that Langton hired him but he had no employment contract. (*Id.*, No. 2b.) He was hired at a rate of $40 per hour but never received a paycheck. (*Id.*) Claimant understood that Bloom would be directing his work at the job site. (*Id.*) Claimant has no written documentation showing that he was hired to work at the job site, nor does he have tax forms showing that he was paid for such work. (*Id.*, No. 2c.) Claimant believed that he worked for Langton, so if Langton owned Coventry, then Claimant believed that he worked for Coventry. (*Id.*) Claimant testified that PMC is the company name that Bloom gave him. (*Id.*)

Bloom testified before the WCJ on February 18, 2009. Bloom testified that he is an unlicensed electrician, so he could not work as a subcontractor. (*Id.*, No. 8a.) He worked at the job site as an employee of Langton. (*Id.*) Paul McLaughlin originally hired Bloom for the job, but Langton took over for McLaughlin. (*Id.*) Bloom further testified that Langton authorized Bloom to hire Claimant and that Langton gave Bloom money to pay Claimant for his work. (*Id.*) Bloom saw Claimant and Langton together at the job site. (*Id.*)

Langton testified before the WCJ on February 18, 2009, and by deposition on October 19, 2009. Langton testified that he is a plumber and operates Coventry. (*Id.*, No. 7a.) Langton had three employees working for him at the job site in September 2007. (*Id.*) Langton denied any affiliation with PMC but acknowledged that there was a company called PMC and that he had worked for PMC at one time for two months. (*Id.*) Langton testified that he has no knowledge of Claimant. (*Id.*) Langton is familiar with Bloom. (*Id.*) Bloom was Langton's subcontractor at the job site for a short time but was not his employee. (*Id.*)

3

Langton denied giving Bloom money to pay an employee of Coventry and denied talking to Bloom about hiring an employee. (*Id.*, No. 7c.) Langton testified that the first time he ever saw Claimant was at the February 18, 2009, hearing. (*Id.*)

On April 26, 2010, the WCJ denied the claim and joinder petitions, finding that Claimant failed to prove that he was an employee of Langton, Coventry, or PMC at the time of his injuries, noting that Claimant produced no documentation of any employment relationship. (*Id.*, No. 11.) The WCJ credited Langton's testimony that: Claimant was not Langton's employee; Langton does not do business as PMC; Langton did not see Claimant at the job site; and the first time Langton ever saw Claimant was at the February 18, 2009, hearing. (*Id.*, No. 12.) The WCJ also noted that Langton produced evidence showing that Coventry had workers' compensation insurance in September 2007, so any injury sustained by a Coventry employee would have been covered. (*Id.*) Finally, the WCJ credited Langton's testimony over Bloom's to the extent that they conflicted. (*Id.*, No. 13.) The WCJ also pointed out that Bloom was unclear as to who hired Claimant for the job and his testimony directly conflicted with Claimant's regarding whether Claimant was paid for his work. (*Id.*)

Claimant appealed to the WCAB, which remanded the matter to the WCJ "to re-open the record to admit new evidence as necessary concerning the various relationships of the parties involved, and for the [WCJ] to reconsider all [of] the evidence, and to make new credibility determinations, findings of fact and conclusions of law as necessary, and to issue an order addressing the various [p]etitions filed in this matter." (WCAB's Op., 11/8/11, at 12.)

4

On remand, the WCJ admitted most, but not all, of Claimant's proffered after-discovered evidence. The WCJ excluded a 2010 Right-to-Know Law[2] request because Claimant failed to authenticate it. (WCJ's Findings of Fact, 10/16/13, No. 8.) The WCJ also excluded five other documents because they had been admitted into evidence at the prior proceeding and, thus, were not after-discovered evidence. (*Id.*, No. 5.) The WCJ admitted Claimant's remaining after-discovered evidence, including the deposition testimony of Jerry Huckabee and the additional deposition testimony of Claimant and Langton. (*Id.*, Nos. 9-10.)

Huckabee testified by deposition on July 12, 2012, and February 11, 2013. Huckabee testified that he has worked for Lakeview Construction (Lakeview) as a project manager since 2007. (*Id.*, No. 6a.) In 2007, Huckabee oversaw the construction of the Philadelphia Premium Outlets and dealt with Langton, who was a bidder for the project. (*Id.*) Huckabee testified that when he spoke to Langton about the project, Langton held himself out as PMC. (*Id.*) Huckabee had no knowledge of Langton hiring Claimant and did not know if Claimant was ever at the job site. (*Id.*) Huckabee further testified that Coventry was the subcontractor of record and was paid for the job. (*Id.*, No. 6b.) PMC did not work at the job site. (*Id.*) Huckabee acknowledged that Langton's name appeared on an August 15, 2007, bid letter on PMC letterhead, which identified Langton as the "estimator." (*Id.*)

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

Claimant testified by deposition on June 1, 2012, and February 18, 2013. Claimant testified that after receiving the WCJ's April 26, 2010, decision, Claimant contacted Lakeview and spoke to Huckabee. (*Id.*, No. 4a.) Huckabee sent Claimant three documents relating to a contract bid for the job site, which confirmed that PMC was the bidder. (*Id.*) Claimant also testified that he submitted two W-2 forms to the WCAB in connection with his appeal but never filed them for tax purposes. (*Id.*, No. 4b.) On the W-2 forms, Claimant indicated that he had earned $1,000, which Claimant stated was "just an arbitrary figure." (*Id.*) Claimant testified that he completed the W-2 forms solely "for the record" and admitted that they were not prepared in September 2007 when he worked at the job site. (*Id.*) Claimant further testified that he possessed some of the proposed after-discovered documents before the WCJ's first decision. (*Id.*)

Langton testified by deposition on September 17, 2012. Langton testified that he never hired Claimant to work either for him or for any business that he owns and did not recall seeing Claimant at the job site. (*Id.*, No. 7a.) Langton denied ever operating a business called PMC. (*Id.*) Langton further testified that he always signs his estimates and that he neither prepared nor signed the August 15, 2007, bid letter on PMC letterhead. (*Id.*, No. 7b.) Langton's home address is on the letter, but the phone number on the letter belongs to McLaughlin. (*Id.*) Langton did not authorize McLaughlin to send out a bid letter using Langton's name or home address. (*Id.*)

On October 16, 2013, the WCJ again concluded that Claimant failed to prove that he was an employee of Langton, Coventry, or PMC at the time of his

September 2007 injuries. The WCJ reaffirmed and incorporated her prior credibility determinations, findings of fact, and conclusions of law and made additional credibility findings based on the new evidence. (*Id.*, No. 13.) Specifically, the WCJ credited Huckabee's testimony that Coventry performed, and received payment for, work at the job site and that PMC did not perform work at the job site. (*Id.*, No. 10.) The WCJ also credited Langton's testimony that he never hired Claimant and never operated a business called PMC. (*Id.*, No. 11.) Finally, the WCJ credited Claimant's testimony "that none of the documents he received either prior or subsequent to the April 26, 2010, decision established an employment relationship between him and Jack Langton, Coventry Plumbing, or Jack Langton doing business as PMC Mechanical." (*Id.*, No. 12.) Therefore, the WCJ denied Claimant's claim petitions and denied the Fund's joinder petition. On December 23, 2014, the WCAB affirmed. Claimant now petitions for review of that decision.[3]

On appeal, Claimant argues that the WCAB erred in affirming the WCJ's decision because the WCJ failed to consider all of his proffered after-discovered evidence on remand in violation of the WCAB's November 8, 2011, order. We disagree.

The WCAB may grant a remand "to allow a party to present newly-discovered, noncumulative evidence"; however, the WCAB will not grant a

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

remand "to permit [a] party to strengthen weak proofs already presented" or to present evidence that is merely cumulative. *Paxos v. Workmen's Compensation Appeal Board (Frankford-Quaker Grocery)*, 631 A.2d 826, 831 (Pa. Cmwlth. 1993); *see also Cudo v. Hallstead Foundry, Inc.*, 539 A.2d 792, 794 (Pa. 1988) (stating that "the [WCAB] may only grant a rehearing where there is 'after[-]discovered, noncumulative evidence [that] could not have been, by the exercise of ordinary diligence, produced at the original hearing'") (citation omitted).

On remand, the WCJ determined that several documents that Claimant sought to introduce had already been admitted at the prior proceeding and, thus, were cumulative. Contrary to Claimant's assertion, the previously admitted documents were part of the record before the WCJ, and the WCJ considered them in her written decision following remand. Consistent with the WCAB's directive, the WCJ admitted new evidence "as necessary" concerning the relationships between the parties, reconsidered all of the record evidence, and made new factual findings and credibility determinations "as necessary" based on that evidence. (WCAB's Op., 11/8/11, at 12.) We find no error.

Next, Claimant argues that the WCJ failed to issue a reasoned decision under section 422(a) of the Workers' Compensation Act (Act)[4] because the WCJ made erroneous credibility determinations. We disagree.

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

8

The WCJ is the ultimate factfinder and the sole arbiter of witness credibility and evidentiary weight and may accept or reject any witness's testimony in whole or in part. *O'Donnell v. Workers' Compensation Appeal Board (United Parcel Service)*, 831 A.2d 784, 789 (Pa. Cmwlth. 2003). The WCJ's findings are conclusive on appeal as long as they are supported by substantial evidence. *Id.* Moreover, a party may not "second-guess the WCJ's reasons for [his or her] credibility determinations. Unless made arbitrarily or capriciously, [those] credibility determinations will be upheld on appeal." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).

Although a WCJ need not explain his or her credibility findings relating to a witness who testifies before the WCJ, section 422(a) of the Act requires a WCJ to explain his or her credibility findings with regard to deposition testimony. *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). Where witnesses testify by deposition, the WCJ must articulate the objective rationales underlying his or her credibility determinations where such testimony is conflicting. *Id.*

In her written decisions, the WCJ articulated objective reasons for rejecting Claimant's testimony as to the identity of his employer at the time of his injuries. In particular, the WCJ summarized the inconsistencies in the testimony regarding who hired Claimant and whether he was paid for his work and resolved those evidentiary conflicts against Claimant. Further, the WCJ credited Huckabee's testimony that Coventry, not PMC, performed work at the job site and

9

was paid for such work. The WCJ also credited Langton's testimony that he never hired Claimant to work for him or for any business that he owned. With regard to the August 15, 2007, bid letter, the WCJ believed Langton's testimony that he neither authorized nor sent the letter. We conclude that the WCJ sufficiently explained her credibility findings with regard to the witnesses' testimony, thereby satisfying the reasoned decision requirement.

Finally, Claimant argues that the WCAB erred in concluding that Claimant was not employed by Langton, Coventry, or PMC at the time of his injuries.[5] We disagree.

In a claim petition, the claimant bears the burden of proving the elements necessary to support his or her entitlement to benefits, including the existence of an employment relationship. *See Universal Am-Can, Limited v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328, 330 (Pa. 2000); *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 742 A.2d 649, 654 (Pa. 1999). The primary factors in determining employee status are whether the alleged employer had the right to control the work to be performed and the manner in which it was performed. *Universal Am-Can*, 762 A.2d at 333.

At both proceedings before the WCJ, Claimant attempted to demonstrate that he worked for Langton, or an entity owned by Langton, at the job

---

[5] Whether an employment relationship exists is a question of law fully reviewable on appeal. *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier Express)*, 631 A.2d 693, 696 (Pa. Cmwlth. 1993) (*en banc*).

10

site. However, the WCJ discredited most of Claimant's evidence. Moreover, as Claimant admitted, none of the documentary evidence proved that Claimant was an employee of Langton, Coventry, or PMC at the time of his injuries. As the WCAB explained:

> The business connections between [Langton, Coventry, and PMC] are irrelevant because Claimant could not establish [that] any of them actually hired and employed him, or most importantly[,] controlled the manner of work he performed at the job site. The evidence only establishes that Claimant worked with Mr. Bloom, but nothing beyond that . . . would link Claimant to any of the three Defendants. All evidence linking Mr. Langton to Claimant was rejected by the [WCJ].

(WCAB's Op., 12/23/14, at 11.) We agree. Because the credible evidence of record failed to establish an employment relationship between Claimant and Langton, Coventry, or PMC, the WCAB correctly concluded that Claimant failed to satisfy his burden of proof.

Accordingly, we affirm.[6]

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[6] Claimant also vaguely asserts that the WCJ erred in denying Claimant's motions filed pursuant to *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board*, 423 A.2d 1125 (Pa. Cmwlth. 1981), in the earlier proceeding. (Cl.'s Br. at 24.) However, Claimant did not include this issue in his statement of questions involved, nor did he develop it in the argument section of his brief. Therefore, it is waived. *See Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 141 (Pa. Cmwlth. 2004).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristian Balas,  :
:  No. 52 C.D. 2015
        Petitioner  :
:
        v.  :
:
Workers' Compensation Appeal  :
Board (Coventry Plumbing and  :
Langton),  :
:
        Respondents  :

## O R D E R

AND NOW, this 10<u>th</u> day of <u>February</u>, 2016, we hereby affirm the December 23, 2014, order of the Workers' Compensation Appeal Board.

_____
ROCHELLE S. FRIEDMAN, Senior Judge