**ELLIOTT COMPANY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SHIPLEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 18, 2002.
Decided April 3, 2002.

481

Francis A. Veltri, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

Before FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

Opinion by Senior Judge FLAHERTY.

Elliott Company (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting Kenneth Shipley (Claimant) workers' compensation benefits for hearing loss. Claimant has also filed a Motion for Assessment of Counsel Fees. We affirm the Board's order and grant Claimant attorney's fees pursuant to Pa. R.A.P. 2744.

On October 31, 1995 Claimant filed a Claim Petition alleging that, as of September 28, 1995, he suffers from bilateral hearing loss as a result of continuous exposure to excessive noise during the course of his employment. Employer filed an Answer denying that Claimant suffers from work-related hearing loss.

At the hearings before the WCJ Claimant testified that from 1964 to 1967 he was exposed to noise when he was a helicopter mechanic in the Army but that he wore hearing protection. When Claimant left the Army, he did not have difficulty hearing. Afterwards, Claimant worked for Duquesne Steel for approximately a year and a half as a millwright helper where he was exposed to loud noise without hearing protection. In 1969, Claimant worked for Pittsburgh Sheet Metal for two or three months as a laborer, where he was exposed to a small amount of noise without hearing protection. On May 5, 1969,

Claimant began working for Employer as a machine operator. Claimant testified that he was exposed to noise from boring mills and planers and drop hammers, which made a sound like a shotgun being fired. Claimant was also exposed to the noise created by turbo chargers and grinding machines. Claimant testified that his exposure to this noise was constant. Additionally, for six or seven years Claimant worked as a sheet metal worker for Employer during which time he was exposed to constant noise from shears used to cut metal plates. For approximately the last six months of his employment, Claimant has been working in the warehouse, which he described as fairly quiet. During the last fifteen years of his employment Claimant wore hearing protection but only when the noise was excessive. (N.T. 4/11/96, pp. 3–14).

Claimant testified that he became aware that his hearing loss was work-related after he was examined by Roger Duerksen, M.D. and received his medical report in November of 1995. As to his family history of hearing loss, Claimant testified that "I have one aunt that was born without an ear, out of 11 kids, but all the rest of them—They're in old age homes. There is nothing wrong with their hearing" (N.T. 4/11/96, p. 21).

When asked about his non work-related noise exposure, Claimant related that he has hunted for the last twenty years and that he shoots his rifle a few times a year to sight it in and then again if he sees a deer. He also has power tools which he does not use on a frequent basis and also a riding lawnmower. He was also exposed to noise from his son's motorcycle which he repaired but did not ride. Claimant also testified that he takes prescription medication to control his high blood pressure (N.T., pp. 15–17). The WCJ accepted the testimony of Claimant as credible.

Claimant's mother, Martha Jean Glover, also testified before the WCJ. She related that Claimant had an ear infection when he was five years old and had his tonsils and adenoids removed but that he did not have any ear infections after this surgery. She also stated that she did not have any hearing problems, nor did Claimant's father or Claimant's brother (N.T. 6/27/97, pp. 7–9). The WCJ accepted this testimony as credible.

In support of his Claim Petition, Claimant presented the testimony of Dr. Duerksen, a board certified otolaryngologist who examined him on November 20, 1995. Dr. Duerksen performed an audiological examination pursuant to the AMA guidelines which revealed a binaural hearing impairment of 66 percent. He also opined that Claimant's hearing loss was caused by his exposure to hazardous occupational noise during his employment with Employer (N.T. 5/07/96, pp. 3–10).

In opposition to Claimant's Claim Petition, Employer presented the testimony of Sidney N. Busis, M.D., a board certified otolaryngologist who examined Claimant on April 3, 1996. Dr. Busis conducted an audiogram which revealed that Claimant suffers from a 60.6 percent binaural hearing impairment. Dr. Busis also opined that Claimant's hearing loss was primarily due to heredity (N.T. 5/16/96, pp. 21–26). He explained that Claimant's audiogram had a trough shape with the worst hearing at the 1,000 and 2,000 hertz frequencies, which is characteristic of hereditary hearing loss (N.T. 12/17/98, p. 12).

To rebut the testimony of Dr. Busis, Claimant deposed Dr. Duerksen again. As to whether Claimant's audiological pattern is consistent with hereditary hearing loss, Dr. Duerksen explained that "a particular audiological pattern is characteristic of a certain condition. That, in other words, people that have this condition

maybe as many as 50 percent may have a pattern that looks like this. However, it is not diagnostic of the pattern because people can have the same disease and have very different appearing patterns. The pattern on a hearing test is not diagnostic of disease, period" (N.T. 8/26/97, p. 9). The WCJ accepted the testimony of Dr. Duerksen as credible and rejected the testimony of Dr. Busis as not credible. Additionally, in Finding of Fact No. 29, the WCJ stated that:

> this Workers' Compensation Judge rejects as lacking credibility Dr. Busis' opinions, particularly his opinions with regard to the effect of heredity in this case. The claimant presented credible testimony of his own and the credible testimony of his mother with regard to familial hearing loss. Both witnesses credibly testified that there was no familial hearing loss in the Shipley family. Nevertheless, Dr. Busis continued to opine that genetics or heredity was a significant role in the claimant's hearing loss. This Workers' Compensation Judge rejects this opinion as lacking credibility because it is speculation that is contrary to direct testimony.

(WCJ's opinion, pp. 17–18).

Employer also presented the testimony of William R. Thornton, Ph.D., a consulting engineer in acoustics, vibrations and noise control. Dr. Thornton conducted a study at Employer's factory for the purpose of measuring Claimant's noise exposure. To accomplish this, Dr. Thornton evaluated the noise exposure that a person performing the various jobs performed by Claimant would experience to develop an estimate of Claimant's noise exposure and supplemented that data with area noise measurements made with a sound meter. After evaluating this data, Dr. Thornton concluded that "the noise exposures are quite low and well within hazardous limits as described here in the state of Pennsylvania" (N.T. 12/07/98, pp. 14–20). In Finding of Fact No. 28, the WCJ rejected this testimony as not credible. The WCJ found, in part, that:

> Dr. Thornton's testimony focused on noise studies which were not performed during one of the most relevant periods in this case, namely, the period of time from September 1992 through September 1995. These were the claimant's last three years of noise exposure at Elliott Company and are highly relevant for a determination of this issue. Dr. Thornton never tested the claimant personally and never tested the noise produced by the dropping of hammers which was a source of significant noise, for example.

(WCJ's decision, p. 17).

By decision and order dated August 30, 1999, the WCJ concluded that Claimant sustained his burden of proving that he suffers from a 66 percent binaural hearing impairment as a result of his exposure to hazardous noise during his employment. Accordingly, the WCJ granted Claimant's Claim Petition. Employer appealed to the Board, which affirmed the decision of the WCJ. This appeal followed.[1]

On appeal, Employer argues that the WCJ's decision is not supported by substantial evidence because: 1) in making his diagnosis, Dr. Duerksen did not have any noise studies from Employer showing that Claimant was exposed to hazardous occu-

---

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

pational noise, but rather relied on what Claimant told him. Also, Employer asserts the testimony of Dr. Thornton clearly shows a lack of long-term hazardous noise exposure for the three years prior to the date that Claimant filed his Claim Petition. Therefore, Employer argues, the Board erred by concluding that Employer did not prove its affirmative defense that the noise Claimant was exposed tó was not hazardous, 2) the WCJ failed to make a specific finding as to Claimant's exposure to occupational noise, and 3) the evidence shows that Claimant's hearing loss began before he started working for Employer. Additionally, Claimant requests unreasonable contest attorney's fees pursuant to Section 440 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996, and Pa. R.A.P. 2744.

█ Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152 (Pa.Cmwlth.1998). In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

█ The requirements for establishing a claim to benefits for work-related hearing loss are set forth in Section 306(c)(8) of the Act, 77 P.S. § 513.[2] The

2.  Section 306(c)(8) states that:
    (i) For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides. The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks. Compensation payable shall be sixty-six and two-thirds per centum of wages during this number of weeks, subject to the provisions of clause (1) of subsection (a) of this section. . . .
    (iii) Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or less than ten per centum, no benefits shall be payable. Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or more than seventy-five per centum, there shall be a presumption that the hearing impairment is total and complete, and benefits shall be payable for two hundred sixty weeks.
    (iv) The percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram. The audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) and Appendices C, D and E to Part 1910.95 (July 1, 1994). . . .
    (vi) An employer shall be liable only for the hearing impairment caused by such employer. If previous occupational hearing impairment

burden of proof is on the claimant to establish that he suffers from a permanent hearing loss of 10 percent or greater that is medically established to be work-related and caused by the long-term exposure to hazardous occupational noise. Whether the employee has, in fact, been exposed to hazardous occupational noise is not part of the claimant's burden of proof. Instead, the Employer may assert as an affirmative defense that exposure to hazardous noise has not occurred. *See Bethlehem Steel Corp. v. Worker's Compensation Appeal Board (Kave )*, 767 A.2d 6, 8 (Pa.Cmwlth. 2001).

■ First, we must address Employer's argument that the WCJ erred by finding that it didn't prove as an affirmative defense that Claimant was not exposed to hazardous occupational noise. Employer argues that, although Dr. Duerksen concluded that Claimant's hearing loss was caused by his exposure to hazardous occupational noise, he arrived at this conclusion without reviewing noise studies and relied on what Claimant told him. Employer fails to realize, however, that "[w]hether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and **not a part of the claimant's burden of proof in a claim.**" *See* Section

306(c)(8)(x) (emphasis added). This Court explained the reasoning behind Section 306(c)(8)(x) in *Meadville Forging Company v. Workers' Compensation Appeal Board (Artman )*, 747 A.2d 958 (Pa. Cmwlth.2000):

> Employer's reading of Section 306(c)(8)(x), however, is much too narrow. This provision always makes it the employer's burden to establish that the noise that a claimant was exposed to was not hazardous occupational noise or that a claimant did not have long-term exposure to hazardous noise in any of the hearing loss provisions, including whether the claim was filed within three years of last exposure. If we were to adopt Employer's reasoning, potential claimants would be constantly "traipsing" through plants with their own experts to determine if they were exposed to hazardous noise; otherwise their claims may become time-barred. **All that a claimant has to do to meet his or her burden under Section 306(c)(8)(i) of the Act is to prima facie establish that the claim was timely filed by showing that he or she was exposed to occupational noise while working for Employer during the three years preceding the claim.** The Employer then may rebut that it was timely filed by establishing that claimant's noise exposure

or hearing impairment from nonoccupational causes is established at or prior to the time of employment, the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded......
(viii) Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought.

(ix) The date of injury for occupational hearing loss under subclause (i) of this clause shall be the earlier of the date on which the claim is filed or the last date of long-term exposure to hazardous occupational noise while in the employ of the employer against whom the claim is filed.
(x) Whether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim.
77  P.S. § 513.

was not hazardous or long-term during that time.

*Id.* at 961 (emphasis added). Based on our reasoning set forth in *Meadville* and the clear intent of the Act, we reject Employer's argument. Claimant testified that he was exposed to hazardous occupational noise during the three years preceding the filing of the Claim Petition and the WCJ accepted this testimony as credible. Thus, Claimant met his burden. Employer also notes that Dr. Thornton found that the level of noise that Claimant was exposed to was quite low. However, the WCJ rejected the testimony of Dr. Thornton as not credible and we may not overturn this credibility determination.[3] Thus, Employer failed to prove as an affirmative defense that Claimant was not subjected to long-term hazardous occupational noise.

█ Second, Employer argues that the WCJ failed to make a specific finding as to whether Claimant was exposed to hazardous noise while working for Employer. In support of its argument, Employer cites *General Electric Co. v. Workers' Compensation Appeal Board (Rizzo )*, 737 A.2d 852 (Pa.Cmwlth.1999). In *Rizzo*, the WCJ accepted as credible the testimony of employer's expert that the claimant's noise exposure was between 80 and 85 decibels and the WCJ granted the claimant benefits. On appeal, the employer argued that its evidence showed that the claimant was not exposed to long-term hazardous occupational noise because OSHA standards set forth that noise is only hazardous to a claimant if he is exposed to 90 decibels or more for eight hours a day. After considering the employer's argument, this Court remanded the case to the WCJ for a spe-

cific finding concerning the claimant's levels of noise exposure because the WCJ made no definitive finding in this regard.

This case is distinguishable from *Rizzo* because the testimony presented by Employer in an attempt to prove that Claimant did not sustain long-term exposure to hazardous occupational noise was *rejected by the WCJ as not credible*. Therefore, unlike *Rizzo*, in this case there was no credible testimony showing that Claimant's noise exposure was not hazardous under OSHA standards. The WCJ did not fail to make any findings, as is evidenced by Finding of Fact No. 28:

> Dr. Thornton's testimony sought to establish that the claimant or similar workers would not have been exposed to hazardous occupational noise during their work for Elliott Company. However, this Workers' Compensation Judge does not find that his studies establish that fact.

(WCJ' Decision, p. 17). Contrary to Employer's arguments, the WCJ addressed this issue in his discussion of Dr. Thornton's testimony and, as is his prerogative, rejected that testimony as not credible. Therefore, we reject Employer's argument.

█ Third, Employer argues that the evidence shows that Claimant's hearing loss began even before he began working for Employer and was caused by various non work-related factors. Certainly, there was evidence presented to this effect. However, the WCJ weighed this evidence and accepted the testimony of Claimant and Dr. Duerksen as credible, who testi-

---

**3.** Employer also argues that Dr. Busis did not reduce Claimant's hearing loss for age-related factors and that the WCJ erred in rejecting his testimony on this basis. However, this is irrelevant. First, the WCJ rejected the testimony of Dr. Busis for many different reasons.

Second, Dr. Busis *extensively* discussed taking age into account when calculating hearing impairment and stated "I think it is valid to take into account aging.... (N.T. 12/17/98, p. 20). Thus, we reject Employer's argument.

fied that Claimant's hearing loss was caused by his exposure to noise while working for Employer. In essence, Employer asks this Court to reweigh the evidence and overturn the WCJ's credibility determinations, which we decline to do. *See Hoffmaster.*[4]

■ Finally, we must address Claimant's Motion for Assessment of Counsel Fees. Claimant argues that he is entitled to unreasonable contest attorney's fees under Section 440 of the Act and/or attorney's fees pursuant to Pa. R.A.P. 2744 because "the brief filed on behalf of [Employer] is simply an invitation to the Commonwealth Court to re-assess the credibility of the witnesses and evidence presented, to re-assess the weight to be accorded to the evidence and to make a new determination to resolve conflicts in the evidence." As to unreasonable contest attorney's fees pursuant to Section 440 of the Act, it is not evident that Claimant raised this issue before the Board and Claimant makes no such allegation to this effect in his Motion. Therefore, this issue is waived. *See* Pa. R.A.P. 1551. Accordingly, Claimant is not entitled to an award of unreasonable contest attorney's fees under Section 440 of the Act.

■ However, we must also address Claimant's claim for counsel fees pursuant to Pa. R.A.P. 2744, which provides that: In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including

(1) a reasonable counsel fee and

(2) damages for delay at the rate of 6% per annum in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious.

Claimant's attorney asserts that he worked on the appeal for this case for approximately four hours and that he normally receives $150 per hour for his services. Thus, he requests a $600 award of attorney's fees.

In *Mercy Catholic Medical Center v. Workmen's Compensation Appeal Board (Fry)*, 114 Pa.Cmwlth. 218, 538 A.2d 636 (1988), we noted that:

**a "frivolous" appeal implies that no justiciable question has been presented and that the appeal is readily recognizable as devoid of merit in that there is little prospect of success.** In this case, Petitioner argued that there was conflicting medical evidence in the record to establish a reasonable basis for contest. Certainly this is a justiciable issue and one not entirely devoid of merit. Merely because we decide that the position taken by Petitioner is incor-

---

4. Employer also argues that Dr. Duerksen didn't test Claimant's hearing at the 3000 hertz level as required by the AMA guides. The basis for Employer's argument in this regard is the statement by Dr. Busis that Dr. Duerksen did not test at this level. *See* N.T. 5/16/96, p. 35. However, Dr. Duerksen testified that his audiograms were performed pursuant to AMA guidelines (N.T. 5/07/96, p. 9). Additionally, the July 15, 1996 and November 20, 1995 audiograms performed in Dr. Duerk-sen's office clearly show that the 3,000 hertz level was tested (Claimant's Exhibit No. 1, p. 5 and Claimant's Exhibit No. 7). Because it is unclear to this Court why Dr. Busis and Employer would insist that the 3,000 hertz level was not tested when the audiograms indicate otherwise and because Employer has cited to no other evidence which would lead us to believe that Dr. Duerksen's audiogram was not performed correctly, we reject Employer's argument.

rect, we are not thereby compelled to conclude that its appeal was frivolous.

*Id.* at 639 (emphasis added).

In the case *sub judice,* we agree with Claimant that Employer's appeal is merely an invitation to this Court to reassess credibility and reweigh the evidence. For example, Employer argues that Claimant was not exposed to hazardous noise. Employer's argument, however, is based on testimony and evidence that was rejected as not credible by the WCJ. As to the other issues raised by Employer, this Court would have to overturn the credibility determinations of the WCJ in order reach the result advanced by Employer. These are not justiciable issues because they are beyond our scope of review. For this reason, Employer's appeal in this matter was frivolous. Therefore, Claimant's attorney is entitled to a $600 award of attorney's fees.

Accordingly, the order of the Board is affirmed and Claimant's Motion for Assessment of Counsel Fees is granted.

### ORDER

AND NOW, April 3, 2002, the order of the Workers' Compensation Appeal Board dated August 28, 2001 and docketed at A99–2922 is hereby AFFIRMED. The Motion for Assessment of Counsel Fees filed by Claimant is hereby GRANTED and Claimant's attorney is awarded $600 in attorney's fees.