Karen MACKEY, Petitioner

v.

WORKERS' COMPENSATION AP-PEAL BOARD (MAXIM HEALTH-CARE SERVICES), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 8, 2010.

Decided Feb. 17, 2010.

Thomas M. Marsilio, Wilkes–Barre, for petitioner.

Michael A. Sebastian, Scranton, for respondent.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BROBSON.

Karen Mackey (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a Workers' Compensation Judge (WCJ), denying the claim petition filed by Claimant. Claimant sought to obtain benefits for injuries she sustained in an automobile accident that occurred while she was driving to the home of a patient to whom she had been assigned by Maxim Healthcare Services (Employer) in her capacity as a home health aide. We affirm the Board's order.

### BACKGROUND

The parties do not dispute the general facts as found by the WCJ.

Claimant began working for Employer as a home health aide in May 2006. Employer provides such services to patients in many areas. Employer, however, assigned Claimant to only one patient from the date she began working through the date of the automobile accident that gave rise to the injuries that are the subject of her claim.

In performing her work assignment, Claimant drove directly from her own home to the patient's home. On January 29, 2008, Claimant's vehicle encountered ice and slid off the road. Claimant exited her car, and another vehicle slid off the road hitting her vehicle, which, in turn, hit Claimant. Claimant sustained serious injuries to her ribs, a knee, and her back.

As a result of her injuries, Claimant could not continue to work, and on April 23, 2008, Claimant filed a claim petition seeking workers' compensation benefits. Employer and its workers' compensation insurance carrier objected to the claim, asserting that Claimant's injuries did not occur in the course and scope of her employment. At the request of the parties, the WCJ agreed to bifurcate the proceedings in order to resolve first the question of whether Claimant was acting in the course and scope of her employment at the time of the motor vehicle accident.

During the hearing to decide the course and scope of employment question, Claimant and Employer's General Manager, Jack Drungell, testified. The hearing focused on the details of the employment relationship relating to Claimant's drive to and from the patient's home. Claimant's testimony indicated that she would drive fifty (50) minutes to the patient's home to work a 9:00 a.m. to 3:00 p.m. shift.[1] Although Claimant was not required to report to Employer's office, at the end of her work week she would drop off paperwork relating to the duties she performed for the patient. Claimant stated that

---

1. Neither testimony in the record nor the factual findings of the WCJ indicate the specific days Claimant worked during the week, but the testimony suggests that Claimant worked Monday through Friday.

there were two routes she could take to the patient's home. On cross-examination, Claimant testified that (1) Employer paid her only for the time she was actually working at the patient's home, (2) Employer did not pay her for the time she travelled to the patient's home, and (3) Employer did not pay Claimant for the mileage to and from the patient's home or for other vehicle-related costs, such as insurance. The testimony of Employer's witness confirmed Claimant's testimony regarding the nature of her driving and the terms of her employment.

The WCJ found that Claimant was not on Employer's clock or being paid for travel time at the time of her injuries. The WCJ further found that Claimant was not working on a special assignment at the time of the motor vehicle accident, but rather travelling to the same place of work to which she drove from the inception of her employment. Given those circumstances, the WCJ concluded that Claimant was not acting in the course or scope of employment at the time she sustained her injuries.

Claimant sought review before the Board of the WCJ's decision, asserting that certain of the WCJ's determinations were either irrelevant to the legal issue involved or not supported by substantial evidence. Claimant also contended that the WCJ erred by failing to make a legal conclusion that Claimant was a temporary employee and a travelling employee, and that the WCJ erred by basing his decision in part on the fact that Employer did not pay Claimant for the time she travelled to and from the home of her client.

The Board rejected Claimant's arguments and affirmed the WCJ, noting that there was no evidence to support Claimant's assertion that she was a temporary employee or had no fixed place of employment. Claimant then petitioned this Court for review.

■ On appeal,[2] Claimant argues that the Board erred in affirming the WCJ's conclusion that Claimant was not injured in the course or scope of her employment because she was a temporary employee or travelling employee, with no fixed place of employment, and she was furthering Employer's business when she sustained her injuries.

## DISCUSSION

■ In order to qualify for workers' compensation benefits, a claimant bears the burden of demonstrating, by substantial evidence, that any injuries she has sustained occurred in the course and scope of her employment. *Waronsky v. Workers' Comp. Appeal Bd. (Mellon Bank)*, 958 A.2d 1118, 1123 (Pa.Cmwlth.2008), *allocatur denied*, 600 Pa. 776, 968 A.2d 1281 (2009). The question of whether an employee has been injured in the course and scope of employment is a question of law, which is fully reviewable by this Court. *Id.* at 1123–34. As both parties and the Board recognize, employees who sustain injuries away from an employer's premises and while travelling to and from work are generally not eligible for workers' compensation benefits. *Peterson v. Workmen's Comp. Appeal Bd. (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116 (1991). This rule is grounded upon the General Assembly's language in Section 301(c)(1) of

2. This Court's standard of review is limited to determining whether substantial evidence supports the WCJ's necessary factual findings, whether the Board violated its procedures, and whether any constitutional rights were violated or any error of law was committed. *City of Philadelphia v. Workers' Comp. Appeal Bd. (Brown)*, 830 A.2d 649, 653 n. 2 (Pa. Cmwlth.2003).

the Pennsylvania Workers' Compensation Act (Act),[3] which describes compensable injuries as those an employee sustains while furthering the business of an employer, "whether upon the employer's premises or elsewhere." Generally speaking, an employee is not deemed to be furthering her employer's interests in simply going to or from work.

 The courts, nevertheless, have created exceptions to this "coming and going" rule. An injured employee may be eligible for benefits for injuries sustained travelling to or from work if: (1) the employment agreement between a claimant and employer included transportation to and from work; (2) the employee has no fixed place of work; (3) the employee is injured while on a special assignment for the employer; and (4) special circumstances indicate that the employee was furthering the business of the employer. *Bensing v. Workers' Comp. Appeal Bd. (James D. Morrissey, Inc.)*, 830 A.2d 1075, 1078 (Pa.Cmwlth.2003). Claimant relies largely upon the second exception—employees with no fixed place of work—and our Supreme Court's decision in *Peterson*, in arguing that the Board erred in concluding that no exception to the coming and going rule applied in this case. Claimant asserts that the facts here support a conclusion that she was a temporary employee, a factor which the Supreme Court in *Peterson* opined warranted an award of benefits. We disagree.

In *Peterson*, the claimant (Peterson) injured her ankle in an automobile accident while travelling to the workplace assigned to her by her employer. Peterson worked for PRN Nursing Agency (PRN), which would engage in agreements with hospitals, nursing homes, and private individuals to provide those entities or individuals,

as needed, with nursing professionals. PRN did not require its nursing professionals to report to its main office; rather, PRN would contact its nursing professionals at their homes regarding particular future assignments, and if a nursing professional accepted an assignment, PRN would provide the employee with information regarding the specific location and time to report for the assignment.

Similar to this case, PRN did not provide the employee with transportation, did not pay its employees for their travel time, and did not reimburse employees for costs associated with travel to their assignments. Although PRN appears to have paid an hourly rate to its employees, like Employer in this case, the end-user of the nursing services, not the employee, reported to PRN the number of hours the employee worked. In Peterson's case, PRN had offered and she had accepted a new assignment. PRN had not given Peterson any directions to make an interim stop, to deliver any messages, to pick anything up, or to perform any services for PRN on her way to the new assignment. Also, as in this case, PRN did not direct Peterson to take any particular route to work.

Our Supreme Court, in considering whether Peterson's commute fell within an exception to the "going and coming" rule, expressed its view of the proper analysis:

The question is not whether the employee was compensated for the service performed before or after the hours of employment; instead, the issue is whether this claimant has a fixed place of work. In determining this question, we must keep in mind that the [Act] is remedial in nature and intended to benefit the worker, and, therefore, the Act

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

must be liberally construed to effectuate its humanitarian objectives.

*Peterson,* 528 Pa. at 287, 597 A.2d at 1120.

The Supreme Court found significant the fact that PRN's purpose was to supply nursing professionals to health care facilities or individuals on a temporary basis. Based upon the temporary nature of the assignments, the Supreme Court concluded that PRN's employees were temporary employees. Ultimately, the Supreme Court opined that "[a] temporary employee, who is employed by an agency, never has a fixed place of work." *Id.* The Supreme Court concluded that "when [an] agency employee travels to an assigned workplace, the employee is furthering the business of the agency. Therefore, . . . as a matter of law, [Peterson] had no fixed place of work . . . and her injury occurred while she was in furtherance of her employer's business." *Id.*

The primary distinction between this case and *Peterson* is that Employer in this case never assigned Claimant to a different patient, whereas, the employer in *Peterson* regularly assigned that claimant to different clients. Additionally, while the record in *Peterson* reflected that PRN's assignments were usually of short duration, the record in this case does not indicate that Claimant's assignment would terminate at any time in the future. Although Claimant argues that, if her patient had to be moved, Claimant would have to change locations, there is no testimony in the record to support this proposition. Unlike the record in *Peterson,* the record here provides no support for future contingencies that would support a finding that Claimant's work location might change in the future.

In a more recent decision of this Court, *Foster v. Workmen's Compensation Appeal Board (Ritter Brothers, Inc.),* 162 Pa. Cmwlth. 565, 639 A.2d 935, *allocator de-*

*nied,* 539 Pa. 683, 652 A.2d 1327 (1994), this Court rejected the claim of an employee who worked as a carpenter for a construction company. The claimant (Foster) claimed that he was injured in a motor vehicle accident after leaving the mall parking lot where he had been working at a job site for his employer. At a hearing, Foster testified that he reported to various work sites as directed by his employer, but that with regard to this particular job, the employer had instructed him to "report to the same job site everyday for an indefinite period until employer's work at the mall was completed." *Id.* at 936. Though the adjudicator concluded that Foster had no fixed place of employment, the Board reversed and denied the claim petition. In his appeal to this Court, Foster relied upon *Peterson.* In discussing the question of whether the holding in *Peterson* applied, this Court stated:

> This Court finds, that *Peterson* merely carves out a specific, narrow exception for a *temporary* employee of an employment agency, because such an employee never has a fixed *place* of work. Both the claimant in *Peterson* and the claimant in the instant matter reported directly to various job sites as assigned by their respective employers. In this case, however, claimant was not a *temporary* employee of an employment agency with the prospect of frequent, multiple, changing job sites.
>
> In the instant matter, claimant was to report to the construction site at the mall until the employer's contract at the mall was completed. It was not envisioned that claimant would report to any other sites or work under the direct supervision of anyone except employer. Claimant's testimony that he was to report to the same site everyday for an indefinite period indicates that he did have a *fixed place* of employment.

*Foster,* 639 A.2d at 938 (emphasis in original).

In *Foster,* therefore, this Court held that Foster's testimony that his employer intended for him to work for in indefinite period of time at the mall work site distinguished the facts of his claim from the claim in *Peterson,* prompting the Court to find that Foster was not a temporary employee. *See also Bensing,* 830 A.2d at 1076 (affirming Board order denying claim petition of construction employee based on assignment to remote location where claimant would stay until job was done or until employer told him to go to another location).

Although, Claimant in this case, like Peterson, worked for an agency that assigned its employees to various locations, Claimant also testified that she had worked at the same job site for one and a half years, and that Employer had never indicated that it intended to change her assignment. We believe that this record takes Claimant's situation out of the realm of *Peterson* and makes this case more similar to *Foster.* Although the holding in *Peterson* does not express any exception to the rule therein created regarding employees of employers who fill staffing positions generally on a temporary basis, the underpinning of the Court's reasoning was that employees of employers who staff temporary positions are different from an ordinary worker who daily goes to an employer's office or center of business.

And while the Court in *Foster* did not involve a "temp" agency, as in this case, the Court did recognize that concept and considered the permanency of a work location to be the key component in both the "temporary" employee context and the "travelling" employee context. The outcomes in both *Peterson* and *Foster* rested upon the nature of the assignment and the evidence adduced in the record. In this case, the testimony indicates that Claimant's assignment was, for all actual and practical purposes, a permanent assignment, requiring her to drive to the same location every day, which Claimant had done for one and a half years. The record contains no testimony regarding the potential for Claimant to have to move to another location. Although Claimant stresses the potential for a future move of her patient to a different location, necessitating that she commute to a different location in order to assist the patient, the record is simply devoid of any support for a finding that such a change will occur. Consequently, based on the facts of record, we cannot conclude that Claimant's position with a "temp" employer alone brings this case squarely within the reach of our Supreme Court's decision in *Peterson,* despite the fact that Employer here, like the employer in *Peterson,* is a "temp" agency.

This Court's decision in *Jamison v. Workers' Compensation Appeal Board (Gallagher Home Health Services),* 955 A.2d 494 (Pa.Cmwlth.2008), *allocatur denied,* 600 Pa. 757, 966 A.2d 572 (2009), does not further Claimant's position. The basis of the Court's decision in that case centered on the fact that the employer required the claimant to visit between one to eight of employer's clients per day. The Court noted that "travel was an essential element of Claimant's work for Employer. As such she was a travelling employee." *Id.* at 499. In this case, Employer's assignment required Claimant to drive to a single location to perform her job. For these reasons, *Jamison* is distinguishable from this case.

Claimant also includes within her argument relating to the temporary and travelling employee exception the suggestion that, notwithstanding the conclusion that she does have a fixed place of employment, the travelling she does falls within the

fourth exception to the going and coming rule—*i.e.*, special circumstances indicating that a claimant is furthering her employer's business. Claimant argues that the icy conditions in which she had to drive the day she was injured support her position that she was furthering Employer's interest because, if she could not manage to make it to her client's home, Employer would be required to send another aide. Thus, she reasons that when she attempted to drive to the patient's house under such inclement conditions, she was furthering Employer's interests. In this regard, Claimant seeks to distinguish cases such as *Foster*, because, she asserts, the consequences of her particular inability to appear at her place of employment might be dire, whereas, the consequences of a construction worker not appearing at a work site would be of little consequence.

While this stream of argument is interesting, we may not proceed to address it as Claimant would like, for reasons similar to those expressed above. We cannot engage in conjecture about such issues where the record would not support factual findings and legal conclusions on the matter. The record contains no testimony regarding the consequences of Claimant's inability to get to her patient's house, nor does the record indicate whether Employer's interests would be adversely affected by Claimant's inability to make it to work.

Further, even if Claimant had submitted such evidence, as to the special circumstances under which courts have concluded that an employee with a fixed place of work is in the course of employment while travelling to or from work, Claimant has not pointed to any case law addressing the fourth exception within which the nature of her transportation to work and from work might fall. We note, however, that this Court has discussed the fourth exception to the "going and coming" rule. In

*Williams v. Workers' Compensation Appeal Board (Matco Electric Company, Inc.)*, 721 A.2d 1140 (Pa.Cmwlth.1998), *allocator denied*, 559 Pa. 685, 739 A.2d 547 (1999), a union employee injured in an automobile accident asserted that provisions of his union's collective bargaining agreement supported the conclusion that he was furthering his employer's business. With regard to the fourth exception, this Court stated:

> [I]t has long been held that the special circumstances entitling an employee to benefits for injuries sustained during a commute must involve an act "in which the employe was engaged ... by order of the employer, express or implied, and not simply for the convenience of the employe." *Rybitski v. Lebowitz*, 175 Pa.Super. 265, 104 A.2d 161, 162 (Pa.Super.1954). *Accord Setley v. Workmen's Compensation Appeal Bd. (Kawecki Berylco Indus.)*, 69 Pa.Cmwlth.241, 451 A.2d 10 (Pa.Cmwlth.1982). Thus, in *Lopresti v. Workmen's Compensation Appeal Bd. (Gulf Constr. Co.)*, 35 Pa. Cmwlth. 7, 384 A.2d 1017 (Pa.Cmwlth. 1978), an injury sustained on the claimant's return home was found to be within the course of employment where the employer requested the employee to call a builder from home and then report back to employer. This court held, "[t]he decedent was purposefully pursuing, during his usual and normal working hours, the performance of his obligations for the benefit and convenience of his employer."

*Williams*, 721 A.2d at 1145.

Accordingly, this Court has held that "special circumstances" are required to trigger the fourth exception to the "coming and going" rule to support a finding that, at the time of the injury, the claimant was acting specifically for the benefit and con-

venience of the employer, not merely commuting to or from her place of work:

> Of course, in a general sense it is always in the employer's interest that employees come to work, particularly if some circumstances of the job, such as its duties or location, make it unattractive. This interest, far from being a special circumstance, is a universal one.

*Id.* at 1146. There are no facts of record upon which we can conclude that at the time of Claimant's motor vehicle accident, she was acting as anything other than a commuter on her way to work. In the absence of proof of such special circumstances, the fourth exception to the "coming and going" rule does not apply.

We note generally that while the responsibility of caring for sick or disabled individuals in their homes is laudable employment, the perspective from which we view the special circumstances exception must be from the vantage of an employer's business interest. We cannot engage in the sort of value judgment required to arrive at the result Claimant seeks—*i.e.*, that on a wholesale basis, any person who works as a home health care aide furthers the business of her employer more than other types of employees who travel to and from work under similar circumstances.

Based upon the foregoing discussion, we affirm the Board's order.[4]

### *ORDER*

AND NOW, this 17th day of February, 2010, the order of the Workers' Compensation Appeal Board is affirmed.

---

4. We note that Claimant also asserted that the WCJ erred in basing his decision in part upon findings relating to the fact that Employer did not compensate or reimburse Claimant for any aspect of her travel costs. That finding, however, was not necessary to the WCJ's legal conclusions nor does it form the basis of any of the Court's conclusions in this appeal. Consequently, we need not address this assignment of error in this Opinion.