# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Enterprise Financial Services Group, :
     Petitioner :
          :
    v.      : No. 371 C.D. 2015
          : Submitted: August 28, 2015
Workers' Compensation  :
Appeal Board (Kunkle),   :
     Respondent :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**     **FILED:  January 8, 2016**


   Enterprise Financial Services Group (Employer) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed an order of Workers' Compensation Judge Ada Guyton (WCJ), which awarded workers' compensation benefits to Prudence Kunkle (Claimant).  For the reasons discussed below, we affirm.

   The following facts are undisputed.  Claimant was employed as a property manager for Employer.  While showing a house to prospective clients on April 24, 2011, Claimant injured her knee when she attempted to step over a broken step.  She immediately reported the injury to Tracy Colgan, Employer's department coordinator, and resumed her regular job duties that same day.  About a week later, Claimant developed pain in her hips, thighs, and lower back.  Claimant went to the emergency room and then followed-up with Michael Pollock, M.D.

Dr. Pollock ordered an MRI and referred Claimant to a pain clinic, where she received four injections in her lumbar spine for pain management. Dr. Pollock also prescribed anti-inflammatories for Claimant. Claimant recovered from her knee injury but continued to receive treatment for her back. Following her injury and throughout the course of her treatment, Claimant continued to perform her pre-injury job without modification.

On November 10, 2011, Claimant met with Douglas Lockard, Employer's Executive Vice President, Darlene Hoy, Claimant's supervisor, and Mary Keller, Employer's Human Resources Director. They informed Claimant that Employer was terminating her employment because her conduct demonstrated a pattern of behavior with co-workers, tenants, customers, clients, and municipal officers that was not acceptable and not in line with Employer's goals and intentions of customer service. Claimant's injury and workers' compensation case were not mentioned or discussed.

Claimant filed a claim petition on December 2, 2011, alleging an upper back injury, L4-5 herniation, aggravation of pre-existing condition, and right knee injury from the April 24, 2011 injury. Claimant sought total disability benefits as of the date of her discharge, as well as payment of medical bills and counsel fees. Claimant alleged that Employer fired her because of her refusal to cooperate with a workers' compensation nurse case manager and because of Employer's fears that her lack of cooperation would cause its insurance rates to rise. Employer alleged that Claimant was fired for cause, namely her hostile attitude and unsatisfactory interactions with vendors, clients, and co-workers, which reflected poorly on Employer. As a result, she was ineligible for benefits.

2

At the hearing before the WCJ, Employer presented the testimony of Mr. Lockard, Ms. Hoy, and Ms. Keller, who all testified about the various complaints made against Claimant and that Claimant's poor behavior was the reason for her termination.

Ms. Hoy testified that on June 30, 2011, one of Claimant's co-workers, Ms. Ooten, made a complaint alleging that Claimant was difficult to work with, made her life miserable, and had touched her. Employer conducted an investigation into Ms. Ooten's allegations. As part of that investigation, Claimant met with Ms. Hoy and Mr. Lockard, who counseled her on her workplace behavior. On July 14, 2011, Ms. Hoy issued a written reprimand, summarizing the June 30, 2011 meeting. She stated that Claimant displayed a pattern of personality conflicts with tenants, clients, and co-workers, was disrespectful of others' work styles, and had made derogatory comments when unsatisfied with others' work. Ms. Hoy reminded Claimant that she was not a supervisor and could not demand performance from her co-workers, directed her to turn over any controversial disagreements, be courteous and professional in her emails, and attend a mandatory education seminar on "Managing Emotions Under Pressure." Claimant was advised that she was being placed on probationary status for 90 days and that "[f]ailure on your part to correct these deficiencies may result in further action on the part of management." (Reproduced Record (R.R.) 287a.)

Ms. Hoy also testified about an incident on September 2, 2011, in which Brenda Cameron, an administrative assistant with Indiana Borough, emailed Ms. Hoy about a complaint she received from one of Employer's clients. Ms. Cameron stated that the client was disgusted with the service and attitude from Claimant, and that Ms. Cameron would no longer recommend or use Employer in

3

the future. Ms. Hoy talked to Claimant about the complaint but did not document the discussion.

Lastly, Ms. Hoy testified about an incident involving Claimant's workers' compensation nurse case manager. On September 22, 2011, Ms. Hoy received a call from Ms. Hayes, the workers' compensation nurse case manager assigned to Claimant by Employer's insurance carrier, informing Ms. Hoy that Claimant was no longer responding to Ms. Hayes' efforts to communicate with her. Ms. Hoy asked Claimant about her refusal to speak with Ms. Hayes, and Ms. Hoy was unsatisfied with Claimant's one-word answers. Ms. Hoy placed a written reprimand in Claimant's personnel file stating, in pertinent part:

> Your response was inappropriate and disrespectful at best. If you think this was an acceptable manner to respond to an inquiry from your supervisor, I can only imagine how you have behaved toward Ms. Hayes . . . . As stated in my email "from the organization's viewpoint, I would recommend you cooperate with her so the matter can be handled appropriately." Your prior conduct toward the insurance company representatives reflects poorly on [Employer] and could have a direct effect on the company's review for coverage renewal.

> With the issues and discussions that have occurred during the past few months relating to your interactions with owners, co-workers, vendors, and others, this a formal notice that if any member of management is advised of any further complaints relative to your cooperation from the workers' compensation insurance carrier or any of their representatives, it may be cause for your immediate termination.

(R.R. 293-94a.)

Mr. Lockard testified that he received a complaint in September 2011 from Craig Davis, a client and vendor who performed property maintenance work for Employer. Mr. Davis complained that Claimant had treated him rudely and

4

unprofessionally. Mr. Lockard did not document the complaint or address the complaint with Claimant.

Mr. Lockard also testified that in October or November 2011, he received a complaint from a client, Ms. Springer, who complained that Claimant had told her she needed to use the online form to put in a work order, but Ms. Springer did not own a computer and Claimant did not return her calls. Ms. Hoy testified that she had to take Ms. Springer's complaint from Claimant and handle it herself, and also had to take over several customer calls that Claimant was handling unsatisfactorily during this time period, but she did not document the complaint or calls in Claimant's file.

Ms. Keller testified that in November 2011, Jackie Schall, a co-worker of Claimant, resigned her employment, alleging that Claimant created an unfavorable work environment by torturing Ms. Schall and being rude, nasty, and belittling. No one conducted an investigation into Ms. Schall's allegations about Claimant. Additionally, Ms. Keller testified that she received an email from Employer's Chairman of the Board, Charles Leyh, stating that if he received any further information from the insurance company that indicated Claimant was not cooperating with its efforts to assist her, Claimant's employment would be terminated immediately.

In response, Claimant testified that she stopped speaking with Ms. Hayes on the advice of counsel and because she did not trust the case manager. She acknowledged that she had been placed on a 90-day probation period following the July 14, 2011 reprimand. She also admitted receiving a phone call from Ms. Springer, but Claimant testified that asking clients to submit a work order online was standard protocol. Furthermore, she was not Ms. Springer's property

5

manager, and it was not her responsibility to return Ms. Springer's calls. Claimant further testified that she never had any serious problems with Mr. Davis and was never informed about any complaint made by him. Lastly, Claimant testified that the only person she had a personality conflict with was Ms. Ooten, and that she believed she was fired because she had a workers' compensation claim and refused to cooperate with the workers' compensation nurse case manager.

Claimant also presented the uncontested testimony of Gregory Lauro, M.D. Dr. Lauro diagnosed Claimant with a right knee sprain and an acute exacerbation of stenosis and herniation. Dr. Lauro recommended that Claimant avoid bending, stooping, and heavy lifting and limit walking. Dr. Lauro opined that Claimant's pre-injury job fell within those guidelines.

The WCJ found that Employer failed to establish that Claimant's behavior warranted her dismissal: "[Employer] failed to provide sufficient information as to what [Claimant's] actual actions were. In addition, [Employer's] inconsistent actions indicated that [Claimant] was not dismissed solely for her behavior, but, at least in part, for her refusal to continue working with the workers' compensation nurse case manager." (WCJ Op. at 7.) The WCJ noted that although Employer's witnesses testified about the various complaints received about Claimant, the only complaint documented in Claimant's personnel file was the July 14, 2011 memo. Furthermore, the WCJ noted that, with the exceptions of Ms. Springer's complaint and the July 14, 2011 memo, Employer's witnesses did not document or testify about Claimant's specific behavior or comments. On the other hand, Employer "clearly expressed its displeasure at [Claimant's] decision not to continue working with the workers' compensation nurse case manager." (WCJ Op. at 9.) The WCJ, therefore,

6

did not find [Employer's] witnesses' testimony credible and persuasive that [Claimant's] decision not to follow up with the workers' compensation nurse case manager was not a factor in [Employer's] decision to fire [Claimant]. The witnesses contended that the decision to fire was based on incidents which did not specifically describe [Claimant's] behavior and on complaints that were not documented in her personnel file or investigated appropriately. But, the incident, which [Employer] contended was not considered in her termination—her refusal to remain in contact with the workers' compensation nurse case manager—had been quickly documented and placed in her personnel file. It, also, brought stern warnings that [Employer] would terminate her employment if she was not cooperating with the insurance company.

(WCJ Op. at 10.)

The WCJ concluded that Claimant had sustained a work-related injury, that Claimant was able to continue working in her pre-injury job because it fell within her physical restrictions relating to the work injury, and that her pre-injury job was no longer available because she was fired. The WCJ further concluded that Claimant's "termination was based on her refusing to cooperate with the workers' compensation nurse case manager," that Employer "failed to establish that [Claimant's] employment was terminated for conduct that would preclude her from receiving partial disability benefits," and that Claimant's "pre-injury job was no longer available through no fault of [Claimant] since she was terminated for her failure to cooperate with the workers' compensation nurse case manager." (WCJ Op. at 12.) Thus, the WCJ granted the claim petition.

Employer appealed to the Board, arguing that the WCJ's findings of fact were not supported by substantial evidence and that the WCJ made errors of law. The Board affirmed, noting that the WCJ credited Claimant's and Dr. Lauro's testimony, but the WCJ did not find credible Employer's witnesses' testimony

7

about the reason for Claimant's termination. The Board noted that the WCJ is empowered to resolve conflicts in the evidence and make credibility determinations, and that the WCJ's findings of fact were based upon substantial evidence. Furthermore, because the WCJ found that Employer failed to establish that Claimant was fired for cause, the WCJ did not commit any errors of law in granting Claimant's petition.

On appeal to this Court,[1] Employer argues that the findings of fact are not supported by substantial evidence, that the WCJ applied an improper analysis to the facts of the case in determining that Claimant's termination was attributable to her work-related injury, and that the WCJ erred in awarding benefits to Claimant because she was working her pre-injury job without modification at the time she was fired. Claimant asserts that Employer's arguments are nothing more than an invitation to reassess witness credibility and reweigh evidence. Claimant, therefore, requests that counsel fees be awarded to her pursuant to Pennsylvania Rule of Appellate Procedure 2744 on the basis that Employer's appeal to this court is frivolous.

The WCJ is the ultimate fact finder in workers' compensation cases, and we are bound by the WCJ's findings of fact if they are supported by substantial evidence. *Gen. Elec. Co. v. Workmen's Comp. Appeal Bd. (Valsamaki)*, 593 A.2d 921, 924 (Pa. Cmwlth.), *appeal denied*, 600 A.2d 541 (Pa. 1991). It does not matter that there is evidence of record which could support a finding contrary to

---

[1] This Court's standard of review is limited to determining whether substantial evidence supports the WCJ's necessary findings of fact, whether the Board violated its procedures, and whether any constitutional rights were violated or any error of law was committed. *Mackey v. Workers' Comp. Appeal Bd. (Maxim Healthcare Servs.)*, 989 A.2d 404, 406 n.2 (Pa. Cmwlth.), *appeal denied*, 997 A.2d 1180 (Pa. 2010).

that made by the WCJ, the only inquiry is whether there is evidence of record which supports the WCJ's finding. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods. Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). "[T]he WCJ is the sole arbiter of the credibility and the weight of testimony and other evidence, and he or she is free to reject or accept the testimony of any witness in whole or in part." *O'Donnell v. Workers' Comp. Appeal Bd. (United Parcel Serv.)*, 831 A.2d 784, 789 (Pa. Cmwlth. 2003).

Here, Employer argues that the WCJ "erred in her assessment of the evidence" and "misinterpreted the evidence" presented by Employer regarding the complaints made about Claimant. This is plainly an attack on the WCJ's weight of the evidence and credibility determinations. Employer is essentially arguing that it presented so much evidence that the WCJ could not possibly have believed Claimant's contention that she was fired for refusing to cooperate with her workers' compensation nurse case manager. There is no indication that the WCJ ignored Employer's testimony; in fact, the WCJ's findings of fact clearly note each complaint and/or incident testified to by Employer's witnesses. Unfortunately for Employer, the WCJ did not find their testimony credible. As the ultimate fact finder, the WCJ is free to believe all, none, or part of the testimony, and this Court will not disturb those determinations on appeal. *See O'Donnell*, 831 A.2d at 789. "The facts that [Employer] produced a greater number of witnesses, and that [it] assert[s] [its] witnesses were more credible, are not paramount." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Furthermore, our review of the record reveals that there is substantial evidence of record to support the WCJ's findings, so the fact that there is evidence of record which would support a contrary finding is immaterial. *See Hoffmaster*,

9

721 A.2d at 1155. Because the WCJ's findings of fact are supported by substantial evidence, this Court is bound by them and may not disturb them on appeal.

Using the facts as found by the WCJ, this Court now considers whether the WCJ erred in determining that Claimant's termination was attributable to her work-related injury. In an initial claim proceeding, the claimant bears the burden of establishing a right to compensation. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Thus, under the Workers' Compensation Act (Act),[2]

> a claimant seeking disability benefits must prove that she has suffered a disability and that the disability was caused by a work-related injury. To prove a disability, the claimant must show not merely physical impairment, but loss of earning power. For the purposes of receiving work[ers'] compensation, 'disability' means loss of earning power, and thus although a claimant may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be 'disabled' under the meaning of the Act and will be entitled to receive compensation.
>
> Where the claimant's loss of earnings is a result of a termination for misconduct unrelated to the injury, the requirement of causal connection to the work-related injury cannot be satisfied and claimant is not entitled to disability benefits for that loss. For a termination to bar disability benefits, the employer must show that the termination was for conduct that amounts to bad faith or a lack of good faith on the part of the claimant.
>
> If the employer has provided work within the claimant's physical limitations at no loss of pay and has shown that the claimant was terminated for conduct evidencing bad faith or a lack of good faith, disability benefits must be denied, regardless of whether the

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

claimant has a physical disability caused by the work-related injury. Under such circumstances, the claimant is not entitled to workers' compensation disability benefits because his loss of earnings subsequent to the discharge was caused by his own action, not by the work injury.

*BJ's Wholesale Club v. Workers' Comp. Appeal Bd. (Pearson)*, 43 A.3d 559, 562-63 (Pa. Cmwlth. 2012) (citations omitted) (quotation marks omitted).

Thus, we must determine if Claimant met her burden of proof to succeed on a claim petition. Here, it is undisputed that Claimant suffered a work-related injury. Moreover, the WCJ found credible Dr. Lauro's testimony that Claimant's ability to work is subject to limitations, namely that Claimant "avoid bending, stooping, and lifting over 20 pounds." (WCJ Op. at 2.) With regard to whether she suffered a loss of earning power as a result of her work injury, such that she is disabled, the WCJ found that Employer terminated Claimant's employment due to her refusal to cooperate with the workers' compensation case manager and Employer's concern that its workers' compensation premiums would increase as a result of Claimant's lack of cooperation. Claimant has, therefore, carried her burden to prove that she suffered a work related injury, that the injury resulted in physical impairment, and that she has experienced a loss of earning power as a result of her injury.

In order to prevent Claimant from receiving disability benefits, Employer had to establish that Claimant's termination was for conduct that amounts to bad faith or a lack of good faith on her part. *See BJ's Wholesale Club*, 43 A.3d at 563. "The WCJ, as fact finder, determines whether a claimant was discharged for conduct evidencing lack of good faith." *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 946 (Pa. Cmwlth.), *appeal denied*, 960 A.2d 457 (Pa. 2008). In this case, the WCJ found that Employer "failed to

11

provide sufficient information as to what [Claimant's] actual actions were. In addition, [Employer's] inconsistent actions indicated that [Claimant] was not dismissed solely for her behavior, but, at least in part, for her refusal to continue working with the workers' compensation nurse case manager." (WCJ Op. at 7.) In fact, the WCJ concluded that "[t]he evidence taken as a whole established that [Claimant's] termination was based on her refusing to cooperate with the workers' compensation nurse case manager." (WCJ Op. at 12.) Thus, the WCJ concluded that Employer "failed to establish that [Claimant's] employment was terminated for conduct that would preclude her from receiving partial disability benefits." (WCJ Op. at 12.) Because the WCJ found that Claimant was disabled within the meaning of the Act and also found that Employer failed to prove that Claimant was discharged for conduct evidencing lack of good faith, the WCJ did not misapply the law to the facts of this case.

Employer, relying on this Court's unpublished decision in *Medina v. Workers' Compensation Appeal Board (Giorgi Mushrooms)* (Pa. Cmwlth., No. 1017 C.D. 2009, filed November 5, 2009), argues that because the WCJ found that Claimant's termination was attributable "at least in part" to both Claimant's behavior and her injury, Employer has met its burden to preclude Claimant from receiving benefits.[3] In *Medina*, the WCJ found that

> [the claimant] was discharged from work for [the employer] through her own fault. Specifically, the evidence shows [the employer] fired [the claimant] for attitude, conduct, substandard work, work rule violation,

---

[3] Pursuant to Commonwealth Court Internal Operating Procedure § 414(a), relating to the citing of judicial opinions, an unreported opinion of the Court may only be cited "for its persuasive value, but not as binding precedent."

12

and insubordination. Part of the reason given for [the claimant's] discharge was her demeanor at work including talking both to her co-workers and on the phone as well as tardiness. While one can argue [the claimant] could not meet the production quota due to her injury, and she was fired for lack of production, this [WCJ] concludes [the claimant's] production was not the only reason for her discharge.

*Medina*, slip op. at 3-4 (second to last alteration in the original). In that case, the WCJ concluded that "the primary behavior" for which the claimant was terminated was not related to her injury and, therefore, denied the claimant benefits. *Medina*, slip op. at 6. Here, however, the opposite occurred. The WCJ found that the primary reason for Claimant's termination was related to her injury and, therefore, awarded benefits. Because *Medina* is inapposite, it does not compel a different result in this case.

Lastly, Employer argues that the WCJ erred in awarding benefits to Claimant because she was working her pre-injury job without modification at the time she was fired. Employer relies heavily on this Court's case law relating to reinstatement petitions and asserts that Claimant is not entitled to a presumption that her work injury is the cause of her disability. Employer's reasoning is flawed. Claimant has not presented a reinstatement petition; rather, Claimant has filed a workers' compensation claim petition for the first time. Because this was an initial claim proceeding, Claimant bore the burden of proving all the elements necessary to receive benefits, including causation. As discussed above, the WCJ found that Claimant carried her burden and that Employer failed to prove that she was terminated for conduct evidencing a lack of good faith. This was Employer's burden to prove in order to prevent Claimant from receiving benefits, and Employer failed. The WCJ, therefore, did not err in awarding benefits despite

13

Claimant's ability to work her pre-injury job without modification prior to her termination.

Finally, Claimant argues that Employer's appeal is frivolous and requests that counsel fees be awarded to her pursuant to Pennsylvania Rule of Appellate Procedure 2744. That Rule provides, in pertinent part, that an appellate court may award a reasonable counsel fee "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa. R.A.P. 2744. [4] A frivolous appeal is one that has no basis in fact or law, but is distinguishable from an appeal that simply lacks merit. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1190 (Pa. 2011). "A 'frivolous' appeal implies that no justiciable question has been presented and that the appeal is readily recognizable as devoid of merit in that there is little prospect of success." *Elliot Co. v. Workers' Comp. Appeal Bd. (Shipley)*, 795 A.2d 480, 488 (Pa. Cmwlth.), *appeal denied*, 805 A.2d 526 (Pa. 2002). An appeal is not frivolous, however, merely because it lacks merit. *Smith v. Pa. Bd. of Prob. & Parole*, 574 A.2d 558, 562 (Pa. 1990).

Claimant argues that under this Court's precedent in *Elliot Company*, Employer's appeal is frivolous because it "would merely require this Honorable Court to reassess credibility determinations of the [WCJ] and is thereby frivolous." (Claimant's Br. at 26.) In *Elliot Company*, this Court held that the employer's appeal was frivolous because it consisted solely of a challenge to the WCJ's

---

[4] There is no indication that Employer filed its petition for review solely for the purpose of delay. Nor do we perceive any dilatory, obdurate, or vexatious conduct on the part of Employer. Thus, the only possible grounds upon which we could impose such fees would be if we concluded the appeal was frivolous, as argued by Claimant.

14

credibility and weight of the evidence determinations, issues beyond the Court's scope of review. *Elliot Co.*, 795 A.2d at 489. This Court has also held, however, that counsel fees are not appropriate in every case in which an employer challenges the WCJ's credibility or weight of evidence determinations. *See, e.g.*, *Frankford Hosp. v. Workers' Comp. Appeal Bd. (Walsh)*, 906 A.2d 651, 657 (Pa. Cmwlth. 2006) (declining to award attorney fees despite employer's challenge to credibility and weight of evidence because appeal "was not so obviously devoid of merit as to be frivolous").

Claimant's argument mischaracterizes Employer's appeal. It is true that Employer's challenge to the findings of fact attacked the WCJ's credibility and weight of the evidence determinations, but Employer also argued that the WCJ made several errors of law. Although Employer's appeal was ultimately unsuccessful, it presented several justiciable issues and was, therefore, not so obviously devoid of merit as to be frivolous. *See Elliot Co.*, 795 A.2d at 488.

For the reasons discussed above, the order of the Board is affirmed and Claimant's request for counsel fees is denied.

_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Enterprise Financial Services Group,   :
                     Petitioner   :
                                     :
         v.                    :    No. 371 C.D. 2015
                                       :
Workers' Compensation             :
Appeal Board (Kunkle),           :
                    Respondent   :

# **O R D E R**

AND NOW, this 8th day of January, 2016, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED, and Respondent's request for counsel fees under Pa. R.A.P. 2744 is DENIED.

_____
P. KEVIN BROBSON, Judge